**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF MISSISSIPPI OXFORD DIVISION**

**DR. AMY R. WOODS** **PLAINTIFF**

**VS.** **CAUSE NO. 3:19-CV-00234-NBB-RP**

**MHM HEALTH PROFESSIONALS, LLC, D/B/A CENTURION PROFESSIONALS; MANAGEMENT & TRAINING CORPORATION; JESSE WILLIAMS, INDIVIDUALLY; AND JOHN DOES 1-9** **DEFENDANTS**

**JURY TRIAL DEMANDED**

---

**SECOND AMENDED COMPLAINT**

---

**COMES NOW** Plaintiff Dr. Amy R. Woods ("Dr. Woods"), by and through counsel, and files this Second Amended Complaint against Defendants MHM Health Professionals, LLC, d/b/a Centurion Professionals; Management & Training Corporation; Jesse Williams, individually; and John Does 1 through 9, inclusive, and would show as follows:

**THE PARTIES**

1. Plaintiff Dr. Amy R. Woods ("Dr. Woods") is an adult resident citizen of Marshall County, Mississippi.

2. Defendant MHM Health Professionals, LLC, d/b/a Centurion Professionals ("MHMHP") is a Mississippi limited liability company. MHMHP may be served by service upon its attorney of record, pursuant to FED. R. CIV. P. 5(b). MHMHP had contracted with Defendant Management & Training Corporation to provide medical services to prisoners at the Marshall County Correctional Facility ("MCCF"). Alternatively, MHMHP may have contracted directly with the State of Mississippi to provide medical services to prisoners.

EXHIBIT "1"

3. Defendant Management & Training Corporation ("MTC") is a foreign corporation registered to do business in Mississippi. MTC may be served by service upon its attorney of record, pursuant to FED. R. CIV. P. 5(b).

4. Defendant Jesse Williams ("Warden Williams") is the Warden of MCCF, and may be served by service upon his attorney of record, pursuant to FED. R. CIV. P. 5(b). MTC operates the private correctional facility, MCCF. MTC is paid to perform the state function of incarcerating convicted prisoners, pursuant to a contract with the State of Mississippi. Warden Williams is an employee of MTC. At all relevant times, Warden Williams acted within the course and scope of his employment as an employee of MTC. Alternatively, if Warden Williams' employer is not MTC, then Dr. Woods requests leave to amend to name the correct employer of Warden Williams when the employer of Warden Williams is learned through discovery.

5. Defendants John Does 1 through 9 are unknown Defendants who may have participated in the civil conspiracy to terminate Dr. Woods, in violation of Mississippi public policy or Defendants who may have tortiously interfered with Dr. Woods' employment, or both.

**JURISDICTION AND VENUE**

6. The Circuit Court of Marshall County, Mississippi, has proper jurisdiction over this action. Defendants claim this Court has diversity jurisdiction, and have removed it to this Court. Dr. Woods cannot know, without discovery, whether there are Defendants who are Mississippi residents, and, therefore, cannot know whether the federal district court has jurisdiction.

7. Venue is proper in either the Circuit Court of Marshall County, Mississippi, or in this Court, because the acts giving rise to this claim occurred in Marshall County, Mississippi.

## STATEMENT OF FACTS

8. Dr. Woods was employed by MHMHP to serve as the on-site physician at MCCF. Alternatively, MHMHP and other entities were Dr. Woods' employer. Dr. Woods alleges that she is an employee of MHM Health Professionals, based upon a letter offering employment to Dr. Woods, dated October 12, 2016, and based upon the position taken by defense counsel. (*See* Offer of Employment, dated October 12, 2016, attached hereto as Exhibit "A.") Dr. Woods, however, may have been an employee of MHM Services, Inc., as indicated in a letter to Dr. Woods, dated January 20, 2017. (*See* Letter to Dr. Woods from Jamaal Gilani, dated January 20, 2017, attached hereto as Exhibit "B.") Dr. Woods may have also been an employee of Centurion of Mississippi, LLC, as indicated in a letter to Dr. Woods, dated October 2, 2017. (*See* Letter to Dr. Woods from Kristie Huff, dated October 2, 2017, attached hereto as Exhibit "C.") In the event other Defendants were the employer of Dr. Woods, she requests leave to amend this Second Amended Complaint to name these other Defendants as her employer. Without discovery, Dr. Woods cannot know what entities may actually be considered to be her lawful employer.

9. Dr. Woods' duties included evaluating and treating prisoners at MCCF. Dr. Woods' duties also included determining when prisoners should be sent for care or hospitalization outside of the facility.

10. Throughout Dr. Woods' employment, Dr. Woods made sound medical judgments as to the treatment of prisoners. There was not adequate medical treatment and adequate personnel available at the MCCF to furnish all the necessary medical treatment for prisoner's serious medical needs. When a prisoner's medical condition was sufficiently severe as to require outside treatment, Dr. Woods instructed staff to transport the prisoner outside of the facility to receive necessary medical care.

11. Warden Williams was the Warden of MCCF. Warden Williams often complained to Dr. Woods about prisoners being taken outside of the prison for treatment or hospitalization. Warden Williams wanted Dr. Woods to refrain from sending prisoners outside the facility for hospitalization or treatment, even for serious medical needs that could not be met onsite. Some prisoners' medical transportations were cancelled by the unilateral actions of staff employed by or controlled by MTC.

12. Dr. Woods continued to make sound medical decisions to care for the serious medical needs of the prisoners. Dr. Woods did not unnecessarily send prisoners outside of the facility, but did send prisoners outside of the facility when a prisoner's serious medical condition required such outside treatment or hospitalization. Dr. Woods treated the prisoners and referred them to outside care, consistent with the prisoners' rights under Mississippi and federal law.

13. Warden Williams and other staff at the prison were angered by Dr. Woods' actions of sending prisoners outside the facility, even when this was necessary to attend to the prisoners' serious medical needs. Warden Williams and other employees of MTC resented the inconvenience and expense of sending prisoners outside of the facility, regardless of their medical needs.

14. Warden Williams encouraged Dr. Woods to ignore the prisoners' constitutional rights to adequate medical treatment. Warden Williams generally demanded that Dr. Woods not require that the prisoners be provided with adequate medical care.

15. Dr. Woods refused to be complicit with depriving any of the prisoners to adequate medical care and refused to be willfully indifferent to the serious medical needs of prisoners. Dr. Woods continued to provide medical care and sound medical decision making as to the prisoners' treatment and hospitalization.

16. Warden Williams confronted Dr. Woods about sending prisoners outside of the prison for treatment and hospitalization. Warden Williams also claimed that Dr. Woods was making negative statements about MCCF, its staffing, and the provision of medical care within the prison.

17. On June 21, 2019, or June 22, 2019, Captain Sandra Rogers, an employee of MTC, countermanded Dr. Woods' order to transport a prisoner to the Baptist Memorial Hospital – North Mississippi ("BMH") in Oxford, Mississippi, for necessary medical treatment of a serious medical condition, consisting of trauma to his ear. On June 25, 2019, Warden Williams told Dr. Woods that her security clearance was revoked. On June 28, 2019, Kristie Huff, a Human Resources employee, believed to be employed by MTC, or, alternatively, employed by a company known as Centurion of Mississippi, told Dr. Woods that she was sending her a "separation packet," thereby terminating Dr. Woods' employment.

18. MHMHP terminated Dr. Woods' employment because she refused to participate in depriving the prisoners at MCCF of necessary medical care, as demanded by Warden Williams and other staff at the prison. The reason Warden Williams revoked Dr. Woods' security clearance was to keep her from providing necessary medical treatment to prisoners that could be provided only outside of the prison facilities.

**COUNT ONE – TERMINATION IN VIOLATION OF MISSISSIPPI PUBLIC POLICY**

19. There were no issues about Dr. Woods' job performance, except that Dr. Woods had refused the explicit directions of Warden Williams and the implied directions of MHMHP that she participate in illegal activity by being deliberately indifferent to the serious medical needs of prisoners. The reason for Dr. Woods' termination was her refusal to participate in illegal activities by refusing to be willfully indifferent to the serious medical needs of prisoners.

20. Examples of the serious medical needs of prisoners, whom Dr. Woods tried to assist by sending them for outside medical treatment, include the following:

    a.    On April 25, 2019, an inmate reported to Nurse Elizabeth Mason that he had been sexually assaulted by another inmate. The inmate stated that he had not showered or bathed since the incident occurred. This inmate needed immediate, off-site evaluation in the emergency room at Baptist Memorial Hospital – North Mississippi ("BMH") in Oxford, Mississippi for a rape collection kit. Both Nurse Practitioner Traci Cox and Dr. Woods gave the order for the inmate to be taken off-site for necessary medical purposes. The MTC security staff declined to take the inmate to the emergency room at BMH at the time; they finally did so the next day. They did so despite the fact they were notified that the DNA evidence is time-sensitive, and the inmate needed evaluation immediately after reporting being raped. Evaluating this inmate was necessary, both to his serious medical needs and to carry out the purpose of providing reliable evidence concerning his alleged rape.

    b.    Another example of an extreme incident of deliberate indifference to a prisoner's serious medical needs occurred on either Friday, June 21, 2019, or Saturday, June 22, 2019. Dr. Woods was called by Nurse Rita Stepp regarding an inmate who had a large portion of his ear bitten off by another inmate. Dr. Woods had no facilities to treat the inmate, and there was a significant danger that the prisoner could bleed to death. Accordingly, Dr. Woods gave the order to send the inmate to the emergency room at BMH for evaluation. The emergency room physician at BMH indicated that the ear trauma was so severe the inmate should be transferred to the University of Mississippi Medical Center ("UMMC") in Jackson, Mississippi, for further treatment and evaluation by a plastic surgeon. Dr. Woods agreed with this assessment, and called Nurse Stepp. Captain Sandra Rogers, an employee of MTC, took the telephone from Nurse Stepp, and angrily told her that MTC security did not have enough staff to transport the inmate. Nurse Stepp told Dr. Woods that the MTC staff would bring the inmate back to the Marshall County Correctional Facility, and that Dr. Woods could arrange outpatient treatment. Dr. Woods informed Captain Rogers that this was not an acceptable plan because of high risk of infection of the inmate's ear. The emergency room physician documented this interaction and the refusal to take the inmate to UMMC. Ultimately, the inmate was taken to UMMC for plastic surgery, but not until several hours later.

        Approximately three (3) to four (4) days after the incident occurred, Warden Williams called Dr. Woods to his office, and informed her that her security clearance was revoked.

21. It is unlawful under Mississippi law for an employer to terminate an employee based on the employee's refusal to perform an illegal act. It is a violation of Mississippi public policy for an employer to terminate an employee because of the employee's refusal to perform an illegal act. It is a violation of Mississippi law to discharge an employee for reasons that conflict with either Mississippi or federal public policy.

22. It is a criminally illegal act to deprive prisoners of necessary medical care under both State and federal law. For instance, MISS. CODE ANN. § 47-1-27 provides as follows:

> An official, or guard, or other employee, having the custody of any county prisoner, or any official or employee of the county having custody of any county prisoner, who shall maltreat or abuse any such convict, or who shall knowingly permit the same to be done, or who being under duty to provide sufficient and wholesome food, clothing, shelter, bathing facilities, or medical attention to such convict, shall willfully fail to furnish the same to such convict, shall be deemed guilty of a misdemeanor, and on conviction shall be fined in any sum not less than Ten Dollars ($10.00) nor more than Five Hundred Dollars ($500.00), or shall be imprisoned not less than one (1) month, or shall suffer both such fine and imprisonment, in the discretion of the court, and it shall be the duty of the judge of the circuit court of such county to so charge the grand jury.

MISS. CODE ANN. § 47-1-27.

23. Similarly, a Federal statute makes it a crime to deprive prisoners of civil rights, such as the right to adequate medical care, under color of State law. The statute provides:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not

> more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 242.

24. The public policy of the United States, through the Eighth Amendment to the United States Constitution, also requires that Dr. Woods not be willfully indifferent to the serious medical needs of prisoners.

25. Dr. Woods refused to engage in the illegal conduct of depriving prisoners at MCCF of adequate medical care and refused to be willfully indifferent to the serious medical needs of prisoners.

26. Dr. Woods was terminated by MHMHP for her refusal to engage in illegal conduct. Her termination was in violation of the Eighth Amendment to the United States Constitution, 18 U.S.C. § 242, MISS. CODE ANN. § 47-1-27, and the established public policy of the State of Mississippi of attending to the serious medical needs of prisoners. Possibly, other entities were also Dr. Woods' employer, and such entities participated in the discharge decision. Dr. Woods requests leave to name these entities as Defendants, should discovery establish that they were Dr. Woods' employer or co-employer.

27. MHMHP is liable to Dr. Woods for terminating her in violation of Mississippi public policy.

**<u>COUNT TWO – CIVIL CONSPIRACY</u>**

28. MHMHP; MTC; Warden Williams, individually; and John Doe Defendants 1-9 engaged in a civil conspiracy to terminate Dr. Woods' employment in violation of Mississippi law.

29. Defendants, or some combination of them, entered into a tacit agreement to terminate Dr. Woods' employment because Dr. Woods would not violate the prisoners' rights to adequate medical treatment.

30. Defendants entered into the conspiracy to accomplish the unlawful purpose of terminating Dr. Woods' employment in violation of Mississippi law.

31. MHMHP, MTC, and Warden Williams, individually, are liable to Dr. Woods for the tort of civil conspiracy.

**COUNT THREE – TORTIOUS INTERFERENCE WITH EMPLOYMENT**

32. MTC; Warden Williams, individually; and John Does 1 through 9, inclusive, engaged in intentional and willful acts designed to interfere with Dr. Woods' employment as the physician at MCCF.

33. MTC, Warden Williams, and the John Doe Defendants engaged in acts that were calculated to cause harm to Dr. Woods in her employment.

34. MTC, Warden Williams, and the John Doe Defendants engaged in acts that were done with the unlawful purpose of interfering with Dr. Woods' employment without right or justifiable cause.

35. Dr. Woods sustained damages as a result of the actions of Defendants' actions.

36. MTC, Warden Williams, and the John Doe Defendants are liable for tortious interference with Dr. Woods' employment.

**COUNT FOUR – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

37. All Defendants acted intentionally and willfully in participating in the scheme to terminate Dr. Woods' employment.

38. All Defendants' actions are such that they evoke outrage in a civilized society. Defendants' actions were directed at Dr. Woods and calculated to cause her harm.

39. Dr. Woods suffered severe mental anxiety and emotional distress as a result of Defendants' intentional actions.

40. All Defendants are liable for intentional infliction of emotional distress.

## DAMAGES

41. Dr. Woods suffered damages as follows:

    a. Lost wages, including back-pay and front-pay;

    b. Lost benefits;

    c. Damages to her professional reputation and standing; and

    d. Damages for mental anxiety and emotional distress.

42. Further, because all of the actions of Defendants were intentional and egregious, Dr. Woods requests an award of punitive damages and an award of her reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Dr. Woods requests an award of compensatory damages and punitive damages against all Defendants. Dr. Woods requests an award of her reasonable attorneys' fees as to all Defendants. Dr. Woods requests trial by jury. Dr. Woods requests pre-judgment interest on the back-pay award, and post-judgment interest on all damages ordered. Dr. Woods requests an award of all costs. Dr. Woods requests such other and more general relief to which she is entitled.

**RESPECTFULLY SUBMITTED**, this the _______ day of _______________, 20_____.

DR. AMY R. WOODS, Plaintiff

By: */s/ Jim Waide*

Jim Waide, MS Bar No. 6857
waide@waidelaw.com
Rachel Pierce Waide, MS Bar No. 100420
rpierce@waidelaw.com
WAIDE & ASSOCIATES, P.A.
332 North Spring Street
Tupelo, MS 38804-3955
Post Office Box 1357
Tupelo, MS 38802-1357
(662) 842-7324 / Telephone
(662) 842-8056 / Facsimile

R. Shane McLaughlin, MS Bar No. 101185
rsm@mclaughlinlawfirm.com
McLAUGHLIN LAW FIRM
338 North Spring Street, Suite 2
Tupelo, MS 38804-3955
Post Office Box 200
Tupelo, MS 38802-0200
(662) 840-5042 / Telephone
(662) 840-5043 / Facsimile

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This will certify that undersigned counsel for Plaintiff has this day filed the above and foregoing with the Clerk of the Court, utilizing the federal court electronic case data filing system (CM/ECF), which sent notification of such filing to the following:

**Elizabeth Ross Hadley, Esquire**
**Greenberg Traurig, LLP**
**300 West 6th Street, Suite 2050**
**Austin, TX 78701-4236**
**hadleye@gtlaw.com**
**pinkertonv@gtlaw.com**
**weathingtonm@gtlaw.com**
**kellyc@gtlaw.com**
**dumitrul@gtlaw.com**
**harrisa@gtlaw.com**
**GableL@gtlaw.com**

**COUNSEL FOR DEFENDANT MHM HEALTH PROFESSIONALS, LLC D/B/A CENTURION PROFESSIONALS**

**Timothy M. Peeples, Esquire**
**Daniel Coker Horton and Bell, P.A.**
**Post Office Box 1396**
**Oxford, MS 38655-1396**
**TPeeples@danielcoker.com**
**sbelk@danielcoker.com**
**nmoore@danielcoker.com**
**ttaylor@danielcoker.com**

**J. Caroline Johnson, Esquire**
**Daniel Coker Horton and Bell, P.A.**
**Post Office Box 1396**
**Oxford, MS 38655-1396**
**cajohnson@danielcoker.com**
**nmoore@danielcoker.com**

**COUNSEL FOR DEFENDANTS MANAGEMENT & TRAINING CORPORATION AND JESSE WILLIAMS**

DATED, this the _______ day of _______________, 20_____.

*/s/ Jim Waide*
Jim Waide



MHM Services, Inc

October 12, 2016

Amy Woods, MD
[redacted]
Byhalia, MS 38611

Dear Dr. Woods,

MHM Health Professionals, a wholly owned subsidiary of MHM Services, Inc. ("MHM"), is pleased to offer you a Per-Diem position as a Site Medical Director within our Centurion of Mississippi contract. This is an exempt position and details of the offer are explained as follows:

**INCORPORATION OF OTHER DOCUMENTS**

This Offer Letter specifically incorporates and adopts all of the terms contained in the Employee Handbook and Code of Business Conduct ("Handbook") as if same were fully set forth herein. In the event of a conflict of any of the terms of this Offer Letter and the Handbook, the terms of the Handbook shall govern.

**DATE OF EMPLOYMENT**

Your immediate acceptance of this offer would confirm your start date as October 17, 2016. This offer is contingent upon successful verification of licensure requirements, successful drug test and NCIC background screening as applicable and successful NPDB (National Practitioner Data Bank) check as applicable. Please note that, if required for your position, you will be expected to present an unexpired CPR certification and tuberculin screening on the first day of work. If unable to do so, an MHM representative will direct you to the process for fulfilling these requirements. Please be advised that many facilities may not allow you to start working until you have presented both the CPR certification and the tuberculin screening.

As part of your employment process with MHM, your cooperation with our professional credentialing process is required. MHM has engaged Credentialing Tracks, Inc., a nationally certified firm, to conduct the licensure verification. Enclosed with this offer letter is a supplemental application, which you must complete and submit as soon as possible, in order to begin the credentialing process. There is no cost to you for this process and all information gathered will be held in strict confidence. Your prompt cooperation with this process is critical.

**SALARY**

You will receive an hourly rate of $100.48 paid on a bi-weekly basis, less appropriate deductions and withholdings, and you will be expected to work on an as needed basis. You will receive a full-time salary of $209,000.00 beginning on January 8, 2017 when your status is changed.

**PAY INFORMATION**

MHM pays all of its employees electronically. You will have an opportunity to complete the pay disposition forms through the online Onboarding process.

Additionally, MHM does not mail pay statements as employees can access pay statements online through ADP iPay. Upon your first pay date, you will be able to register and the iPay statement will be available for you to view and print 24 hours a day, 7 days a week through ADP iPay's secure Internet site. Please see the enclosed iPay information sheets for more details.

**SIGN ON BONUS**

You are eligible for a sign on bonus of $5,000.00 payable with the paycheck corresponding to the pay-period following your first of 90 days of service. You will receive a $5,000.00 retention bonus after 6 months of consecutive full-time employment. Should you terminate your employment voluntarily or be terminated with cause within one year of your date of hire, money will be paid back on a prorated basis.

Initials 

EXHIBIT "A"



MHM Services, Inc

**BENEFITS**
You will not be eligible to participate in MHM's benefit plans, which include Paid Days Off (PDO) until you begin full-time employment on January 8, 2017.

**401(k) EMPLOYEE SAVINGS PLAN**
You will not be eligible to participate in our 401(k) Employee Savings Plan until you begin full-time employment on January 8, 2017.

**TIMEKEEPING**
MHM requires you to accurately report all hours worked. By using an electronic timekeeping system, MHM ensures that your time will be accurately recorded and calculated to company and contract policies, resulting in fairness for all employees. MHM also uses this system as a means of financial reporting and analysis. You will receive instructions on how to use the system prior to your first day of employment.

**AT WILL EMPLOYMENT**
Your employment is on an at-will basis, which means you have the right to terminate your employment at any time for any reason, and we have that same right. This is a legal qualification, and is in no way meant to diminish your value to the company and the quality of services we anticipate you will provide. It is important, however, that you understand no inference as to employment for any specific period of time is to be drawn from the fact that at times this letter and other employment-related materials may refer to certain compensation or benefits on an annualized basis. You are expected to comply with all MHM internal policies and procedures as well as any of our client's policies and procedures which may be applicable to you, which may be amended from time to time. Finally, you understand that as a requirement of working on this MHM program, you are required to obtain and maintain facility access privileges at the correctional facility to which you are assigned, which is granted and may be revoked by the client in its sole discretion. In addition, you understand that, because of MHM's status as a contractor to the client, you serve at the pleasure of the client who may also, with or without reason, request that you be removed from the program. Loss of access privileges or requests for your removal from the program by the client will result in termination of your employment with MHM.

**MEDICAL MALPRACTICE INSURANCE**
MHM will provide medical malpractice coverage at MHM's expense upon receipt of your employment application form, fully completed and signed. The coverage will apply to services rendered during your employment with MHM even if a claim is filed after your termination.

**ACCEPTANCE OF OFFER and AGREEMENTS**
If this offer is acceptable to you, please sign this offer letter below and bring it along with the other required documents listed on the New Hire Onboarding memo to the Marshall County Correctional Facility on your first day of employment. Please note that should MHM not receive your acceptance of this offer by your start date, this offer will expire.

We are very excited about your joining our team. We believe you can make a significant contribution to the success of MHM.

Sincerely,

[signature]

Jamaal Gilani
HR Administrator

**READ and ACCEPTED:**

[signature] 10/16/2016

Amy R. Woods, MD — Date



MHM Services, Inc

January 20, 2017

Amy Woods, MD
[redacted]
Byhalia, MS 38611

Dear Dr. Woods,

This letter is to confirm your change from Per Diem to Full Time status within the Centurion of Mississippi Contract effective January 8, 2017 as a Site Medical Director. This is an exempt position.

**SALARY**
As a Full-Time employee, you will receive an annualized salary of $209,000.00 paid on a bi-weekly basis at $8,038.46, less appropriate deductions and withholdings, and you will be expected to work 40 hours per week.

**BENEFITS**
You will be eligible to participate in our health insurance plans on the first of the month following your change to Full-Time status, in accordance with company policy. These benefits include Medical, Dental, Vision, Life Insurance, and Accidental Death and Dismemberment (AD&D). Both Short-Term Disability (company-paid) and Voluntary Long-Term Disability Insurance, if elected, take effect after six months of continuous service with MHM. Detailed plan information is included with this status change letter, in addition to information on how to enroll online through MHMConnect. You have 31 days from your status change date to complete and submit your benefit elections. If you do not enroll, you will only be covered under the company-paid life insurance, AD&D, and Short-Term Disability. You will have an option each year during Open Enrollment to make new elections for the next calendar year. If you have any Benefits questions prior to your status change, please contact our Benefits Department by calling 1-800-416-3649.

**PAID DAYS OFF (PDO) and COMPANY PAID HOLIDAYS**
You will be eligible for 20 Paid Days off (PDO) (which is a combination of vacation and sick leave) per year and eight (8) Paid Company Holidays. You will begin accruing PDO at a rate of 6.15 hours per pay period on your first day as Full-Time employee.

**401(k) EMPLOYEE SAVINGS PLAN**
You will be eligible to participate in the company's 401(k) Savings Plan, administered by Transamerica Retirement Solutions, as of your date of hire. You can contribute up to 75% of pay on a pre-tax and/or a post-tax basis. Company matching of your savings will begin on the first (1st) of the month following your enrollment in the plan. If your hire date is on the first (1st) of the month, the company match will begin as soon as administratively feasible upon enrollment in the plan. A detailed description of the plan and enrollment materials will be sent to your home once your employment begins. If you wish, you may also roll over your 401(k) account balance from any previous employer into the MHM Plan.

All other terms and conditions of the original offer letter will remain the same.

Please sign this document to acknowledge the details of your employment and fax it back to the Human Resource Department for a copy to be retained in your personnel file. The fax number is (703)245-9026.

Sincerely,

[signature]

Jamaal Gilani
HR Administrator

**READ and ACCEPTED:**

[signature] 1/22/17
Amy Woods Date

**EXHIBIT "B"**



Centurion
of Mississippi

October 2, 2017

*Sent via electronic delivery*

Dear Employee,

In a recent audit of pay practices across the Centurion of Mississippi contract, we have found a discrepancy as to how our medical doctors are being paid. The findings showed how medical doctors and dentists are paid with regard to being paid on an hourly or salaried basis. According to the IRS Wage and Hour Division, medical doctors and dentists are exempt from receiving overtime, regardless of being paid on an hourly or salaried basis.

You are receiving this correspondence because you are currently a salaried employee. It is a high priority to ensure all doctors are paid on a consistent basis in our contract, and therefore, the program will switch your pay from salaried to hourly effective October 15, 2017.

There are several important facts that you should know about being classified as an hourly employee:

- You will be paid your hourly rate on a bi-weekly basis, less appropriate deductions and withholdings. You will be paid for all hours worked.
- You will be expected to work 40 hours each week.
- You will continue to clock in and out of the timekeeping system as you have been doing.

If you have any questions regarding the content of this correspondence, please contact me directly at 662-570-3233.

Sincerely,
*Kristie Huff*
Kristie Huff
Human Resources Business Partner

111 Capitol Street, Suite 440
Jackson, MS 39201

**EXHIBIT "C"**