# Exhibit A

# EDMUND A. MILLER, MD

955 Waverly Drive, West Point, Mississippi 39773 · (662) 295-0866 · emiller@nmhs.net

## I.   Statement of Opinions

I have reviewed the medical records of Marshall County Correctional Facility inmates **INMATE A, INMATE B, and INMATE C**. I have formulated opinions regarding these inmates and Dr. Woods' medical decisions regarding each patient. All opinions stated herein are to a reasonable degree of medical certainty.

The sole arbiter in medical decision making is the physician. Nonmedical personnel are specifically excluded from the decision-making process. The first page of the first section (J-A-01) of the *Standards for Health Services in Jails* makes this ultra clear. By definition, "Access to care means that, in a timely manner, a patient is seen by a qualified health care professional, is rendered a clinical judgment, and receives the care that is ordered." In the discussion section it is further clarified that this is the single overarching fundamental principal upon which all National Commission on Correctional Health Care standards are based, and is the singular guiding principal upon which all medical care is provided.

I first note that as the designated responsible physician, Dr. Woods was the sole arbiter of patient care. Dr. Woods' decisions as to necessary care and as to referral to an outside facility were final and should have been treated as such. Aside from mere medical decision making, it is my opinion that Dr. Woods would have engaged in criminal conduct had she not acted as she did in obtaining outside medical treatment for the inmates.

For example, Inmate **B** suffered a partially severed ear. The human ear is an anatomically complicated device. It would have been grossly inadequate care to attempt to repair the ear with stitches. This course of treatment would have been fraught with the potential for serious and life-threatening complications. The injury to this inmate's ear constituted a medical emergency, which required specialty consultation and care.

Inmate **A** was raped. There are specific procedures which are mandated in the care of rape; Dr. Woods followed the required standard of care by referring the inmate for outside care. The rape was a medical emergency for which a referral to outside emergency medical treatment was required.

Inmate **C** suffered acute severe unexplained testicular pain. Dr. Woods appropriately developed a strong clinical suspicion that this patient/inmate had developed a condition called testicular torsion, where the testicle actually twists in the scrotal sac and, in doing so, cuts off the blood supply to the testicle. This condition is acutely painful and abruptly endangers the viability of the testicle. This condition cannot be diagnosed at the bedside by clinical examination; it can be only suspected. The standard of care to diagnose this condition is

ARW-000001

a test called a scrotal ultrasound. As one can see from the medical records, that test was appropriately ordered. It was then countermanded by the Warden. The only treatment for said condition is emergency surgery. Here is the salient point: it is not important that the patient did or did not have the condition. The item of critical importance is that the condition was appropriately suspected and the following clinical decisions were excellent. This injury was a medical emergency for which a referral to outside emergency medical treatment and a scrotal ultrasound was required.

I am aware that it is an illegal act to deprive inmates of certain civil rights guaranteed to them under the United States Constitution. I am aware that it is a violation of an inmate's civil rights for a physician to be deliberately indifferent to a serious medical condition. I understand that deliberate indifference occurs when a physician is subjectively aware of and intentionally disregards a serious medical condition. I understand that denying access to medical care when the physician knows of the inmate's serious medical condition is a violation of the inmate's civil rights, and thus, a criminal act on the part of the physician.

Based on my review of the medical records of these inmates, it is my opinion that Dr. Woods would have been deliberately indifferent to these inmates' serious medical conditions by denying them access to outside medical treatment. Any prison physician who ignored these requests for medical treatment and refused to send the prisoners to a hospital would be deliberately indifferent to the serious medical conditions and would thus violate the inmates' civil rights under color of state law, amounting to a criminal offense by the physician.

## II. Facts or Data Considered

I have reviewed the following texts and documents in formulating my opinions as to Dr. Woods' case.

- A. Contract/Offer of Employment
- B. Addendum
- C. Correspondence regarding audit
- D. Memorandum prepared by Dr. Woods
- E. Separation Packet
- F. Filed Complaint (state court)
- G. Notice of Removal
- H. State court record
- I. Centurion of Mississippi, LLC's Motion to Dismiss
- J. Centurion of Mississippi, LLC's Memorandum of Law in Support of Motion to Dismiss
- K. Separate Answer and Defenses of Management & Training Corporation and Jesse Williams

L.    First Amended Complaint

M.    Separate Answer and Defenses of Management & Training Corporation and Jesse Williams to First Amended Complaint

N.    MHM Health Professionals, LLC's Motion to Dismiss

O.    MHM Health Professionals, LLC's Memorandum of Law in Support of Its Motion to Dismiss

P.    MHM Health Professionals, LLC's Rule 26 Initial Disclosures

Q.    Plaintiff's Initial Disclosures

R.    Initial Disclosures of Management & Training Corporation and Jesse Williams

S.    Plaintiff's Response in Opposition to Defendant MHM Health Professionals, LLC's Motion to Dismiss

T.    Plaintiff's Memorandum Brief in Opposition to Defendant MHM Health Professionals, LLC's Motion to Dismiss

U.    MHM Health Professionals, LLC's Reply to Dr. Woods' Response to MHMHP's Motion to Dismiss

V.    Plaintiff's Responses to Defendant Management & Training Corporation's First Set of Interrogatories and Requests for Document Production

W.    Second Amended Complaint

X.    Separate Answer and Defenses of Management & Training Corporation and Jesse Williams to Second Amended Complaint

Y.    MHM Health Professionals, LLC's Answer and Defenses to Plaintiff's Second Amended Complaint

Z.    Plaintiff's Response to Defendant MHM Health Professionals, LLC d/b/a Centurion Professionals First Set of Interrogatories and Requests for Document Production

AA.    Consent Confidentiality Protective Order

BB.    Management & Training Corporation and Jesse Williams' Responses to Plaintiff's First Set of Requests for Admissions

CC.    MHM Health Professionals, LLC's Objections and Responses to Plaintiff Dr. Amy R. Woods' First Set of Interrogatories, Requests for Production of Document, and Requests for Admission

DD.    MHM Health Professionals, LLC's Objections and Responses to Plaintiff Dr. Amy R. Woods' Second Set of Requests for Production of Documents

EE.    MHM Health Professionals, LLC's document production in response to Plaintiff's First and Second Set of Requests for Production of Documents (Bates Nos. MHMHP 000001 – MHMHP 000294)

ARW-000003

- FF. MHM Health Professionals, LLC's document production in response to Plaintiff's First and Second Set of Requests for Production of Documents (Bates Nos. MHMHP 000295 – MHMHP 000394)
- GG. Management & Training Corporation and Jesse Williams' Responses to Plaintiff's First Set of Interrogatories
- HH. Plaintiff's First Supplemental Pre-Discovery Disclosures of Core Information
- II. MHM Health Professionals, LLC's document production in response to Plaintiff's First and Second Set of Requests for Production of Documents (Bates Nos. MHMHP 000395 – MHMHP 000396)
- JJ. *Standards for Health Services in Jails* (2018)
- KK. *Standards for Health Services in Prisons* (2018)
- LL. Management & Training Corporation and Jesse Williams' Responses to Plaintiff's Second Set of Requests for Production of Documents
- MM. Management & Training Corporation and Jesse Williams' Responses to Plaintiff's First Set of Requests for Production of Documents
- NN. Management & Training Corporation and Jesse Williams' First Supplemental Responses to Plaintiff's First Set of Requests for Production of Documents

## III. Experience, Qualifications, and Background

*See* curriculum vitae, attached hereto as Exhibit "A."

## IV. Publications and Testimony

I have not authored any publications within the last ten years, and have not testified as an expert witness in the last ten years.

## V. Statement of Compensation

I am compensated at the rate of $250.00 per hour for research, review, analysis, and for attendance at depositions and trial.

I declare under the penalty of perjury that the foregoing is true and correct. Signed this 5th day of August, 2020, in West Point, Mississippi.

Respectfully submitted,

*/s/ Edmund A. Miller, MD/*

EDMUND A. MILLER, MD

ARW-000004

# EDMUND A. MILLER, MD

955 Waverly Drive, West Point, Mississippi 39773 · (662) 295-0866 · emiller@nmhs.net

## PROFESSIONAL EXPERIENCE

**1982**
*Associate Consultant*
**MAYO CLINIC**
Rochester, Minnesota

**1982 - PRESENT**
*Active Medical Staff*
**CLAY COUNTY MEDICAL CENTER**
West Point, Mississippi

**1982 - PRESENT**
*Director Intensive Care Services*
**CLAY COUNTY MEDICAL CENTER**
West Point, Mississippi

**1991 – 1993**
*President, Prairie Medical Society*
**MISSISSIPPI STATE MEDICAL ASSOCIATION**

**1994 – PRESENT**
*Medical Advisor to the Clay County Jail*
West Point, Mississippi

**1994 - 1996**
*Chief of Medical Staff*
**CLAY COUNTY MEDICAL CENTER**
West Point, Mississippi

**1996 – 2002**
*Member, Board of Directors*
**CLAY COUNTY MEDICAL CENTER**
West Point, Mississippi

EXHIBIT "A"

**1996 – 2004**
*Member, Credentials Committee*
**MISSISSIPPI STATE MEDICAL ASSOCIATION**

**2002 – 2004**
*Chairman, Board of Directors*
**CLAY COUNTY MEDICAL CENTER**
West Point, Mississippi

**2002 – 2004**
*Delegate to the American Medical Association*
**MISSISSIPPI STATE MEDICAL ASSOCIATION**

**2008 – 2010**
*Delegate to the American Medical Association*
**MISSISSIPPI STATE MEDICAL ASSOCIATION**

**2013 – PRESENT**
*Clinical Professor of Medicine*
**WILLIAM CAREY SCHOOL OF MEDICINE**
Hattiesburg, Mississippi

**2016 – PRESENT**
*Certified in Medical Pharmacogenomics*
**MAYO CLINIC**
Rochester, Minnesota

## EDUCATION

**1971 –1974**
ASBURY COLLEGE
Wilmore, Kentucky

**1975 – 1979**
GRADUATED WITH HONORS
UNIVERSITY OF MISSISSIPPI MEDICAL CENTER
Jackson, Mississippi

**1979 - 1982**
RESIDENT, INTERNAL MEDICINE
MAYO CLINIC
Rochester, Minnesota